UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CORINNA CLENDENEN, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>STEAK N SHAKE OPERATIONS, INC.<br><br>Defendant. | Case No. 1:17-cv-01045-JBM-JEH |

## ORDER & OPINION

This matter is before the Court on Defendant Steak N Shake's Motion to Dismiss, or in the Alternative, Stay or Transfer the Action. (Doc. 15). For the reasons explained below, Defendant's Motion shall be granted and the case shall be transferred to the Eastern District of Missouri.

### I. BACKGROUND

On January 30, 2017, Plaintiff filed this suit to bring a class action on behalf of herself and other current and former "managers" of Defendant's restaurant for alleged violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b), and Illinois's equivalent statute, the Illinois Minimum Wage Law ("IMLW"), pursuant to 820 Ill. Comp. Stat. § 105/1 *et seq.* (Doc. 1 at 1). Plaintiff is a Peoria resident while Defendant is an Indiana corporation, registered to do business in Illinois. (Doc. 1 at 2-3).

Plaintiff alleges that she, and the proposed class, routinely worked more than forty hours per work week without receiving overtime compensation in violation of

the FLSA and the IMLW. (Doc. 1 at 6, 9). Since then, nine additional parties have consented to join Plaintiff's litigation. (See Docs. 3-9, 11, 21). Two are residents of Tennessee. (*See* Docs. 7, 9). Two are residents of Ohio. (*See* Docs. 11, 21). The remaining five are residents of Illinois, with four of the five residing near or around Peoria, Illinois. (*See* Docs. 3-6, 8).

On March 14, 2017, Defendant filed a Motion to Dismiss, or in the Alternative, Stay or Transfer the Action. (Doc. 16). Defendant alleges Plaintiff's complaint seeks to certify a class that overlaps with the conditionally certified class in a conditionally certified class action in the Eastern District of Missouri. *Drake, et al. v. Steak N Shake*, No. 4:14-cv-1535-JAR (E.D. Miss. Sept. 8, 2014). (Doc. 16 at 1). *Drake* was filed on September 8, 2014. (Doc. 16 at 3). In *Drake*, the plaintiffs allege that as managers of Steak N Shake they were repeatedly required to work overtime without compensation in violation of the FLSA and the equivalent Missouri state statute. (Doc. 16 at 3). On December 17, 2015, Judge John A. Ross granted the parties' joint stipulation on a conditional class certification which limited the putative class to managers who worked within Defendant's St. Louis group market. (Doc. 16-3). Plaintiff's attorney is also Ms. Drake's attorney.

Defendant argues that under the first-filed rule, the case should be dismissed because it is substantially similar to the *Drake* action. (Doc. 16 at 7-13). Alternatively, if the Court does not dismiss the case, Defendant argues that the Court should transfer the case to the Eastern District of Missouri. (Doc. 16 at 14).

On May 1, 2017, Plaintiff filed a Motion to Certify Class. (Doc. 24). Plaintiff seeks to certify a nationwide class on behalf of all managers working at Defendant's

2

restaurants, except those located within the St. Louis group market. (Doc. 24). Additionally, on May 3, 2017, Plaintiff filed a Motion for Leave to File a First Amended Complaint. (Doc. 26). Plaintiff wishes to add another named plaintiff, Jennifer Piccolomini. (Doc. 26 at 1). Ms. Piccolomini is an Ohio resident and worked at one of Defendant's restaurants in Ohio. (Doc. 26 at 1). Plaintiff seeks to add a complaint whereby Ms. Piccolomini asserts a class claim on behalf of those working as managers in Ohio under the FLSA, as well as adding an overtime claim under Ohio's equivalent wage laws, Ohio Rev. Code Ann. § 4111, *et seq*. (Doc. 26 at 1). Although the Court has not yet ruled on either motion, they are mentioned because they affect the Court's decision in transferring the case to the Eastern District of Missouri.

## II. FIRST-FILED DOCTRINE

First, the Court addresses Defendant's argument that the case should be dismissed under the "first-filed" doctrine because it is nearly identical to the *Drake* case. The Court finds that the Plaintiffs and their potential claims sufficiently different; therefore, dismissal is inappropriate.

### A. LEGAL STANDARDS

The "first-filed" doctrine holds that when faced with two identical, or nearly identical cases, in two different courts, the "first case should be allowed to proceed and the second should be abated." *Asset Allocation & Mgmt., Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989). The first-filed doctrine does not create a hard rule, but rather serves as a compliment to courts' procedural rules that gives courts discretion in determining whether a case should proceed if it is substantially similar

3

to a case proceeding in another court. *Humphrey v. United Healthcare Servs.*, No. 14-C-1157, 2014 U.S. Dist. LEXIS 96416, at *5-6 (N.D. Ill. July 16, 2014) (citations omitted). The doctrine is "'premised on the notion that there should not be simultaneous litigation of essentially identical claims in two federal district courts; one of those actions should yield to the other in the interest of judicial economy.'" *Id.* (citing *Alchemist Jet Air, LLC v. Century Jets Aviation, LLC*, No. 08-C-5486, 2009 U.S. Dist. LEXIS 49472, at *5 n.4 (N.D. Ill. June 12, 2009)).

The court has wide latitude in determining whether cases are sufficiently identical for the purposes of the first-filed doctrine. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Generally, the court will find that a suit is duplicative if the "'claims, parties, and available relief do not significantly differ between the two actions.'" *Id.* (citing *Ridge Gold Standard Liquors v. Joseph E. Seagram*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). Claims are not required to be identical; but rather, the issues must "substantially overlap" for them to meet the "same issues" requirement. *Humphrey*, 2014 U.S. Dist. LEXIS 96416, at *6-7 (citations omitted).

"When confronted with duplicative litigation, the district court is authorized to dismiss, transfer, or stay a second-filed case under the first-to-file principle." *Askin v. Quaker Oats Co.*, No. 11-cv-111, 2012 U.S. Dist. LEXIS 18665, at*7-8 (N.D. Ill. Feb. 15, 2012) (citing *Serlin*, 3 F.3d at 224). Although dismissal is allowed when applying the first-filed doctrine, the United States Court of Appeals for the Seventh Circuit has repeatedly counseled lower courts that dismissal of the later filed suit is rarely the appropriate remedy, even if the cases are completely identical. *Id.* (citing *Central States, S.E. & S.W. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444-

45 (7th Cir. 2000); *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1990)).

## B. DISCUSSION

Although this case and *Drake* are very similar, the plaintiffs and claims are sufficiently different to make dismissal inappropriate. First, Plaintiff is ineligible to participate in the *Drake* lawsuit because she has never worked as a manager within the St. Louis group of Defendant's restaurants. Therefore, while the claims are substantially similar, the plaintiffs between this case and *Drake* are not. Because Plaintiff is precluded from participating in the Drake lawsuit, she would be without recourse to seek her claims if this case were dismissed; therefore, dismissal is inappropriate. *Bell v. Bimbo Foods Bakeries Distrib.*, No. 11-C-03343, 2011 U.S. Dist. LEXIS 135904, at *4 (N.D. Ill. Nov. 28, 2011) (quoting *Central States*, 203 F.3d 444) ("the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests . . .").

Furthermore, there is a difference in claims between this case and *Drake*, because *Drake* alleges violations of the Missouri wage laws and Plaintiff, here, alleges violations of the Illinois wage laws. Plaintiff also filed for leave to amend her Complaint and include violations of the Ohio wage laws as well. Although the state wage law claims may overlap with the FLSA and each other, it is possible that Plaintiff could be harmed either substantively or procedurally if her claims are dismissed if the state law claims are superior to the FLSA. *See id.* at *5-6 (finding that dismissing the plaintiff's potential class action was inappropriate because it was not absolutely clear that the plaintiff would not be harmed). Therefore, it is not

5

"absolutely clear" that Plaintiff will not be adversely affected by dismissal and dismissal is inappropriate.

### III. TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)

Although the Court has determined that dismissal is not warranted under the first-filed doctrine, it must still consider whether the case should proceed here or be transferred to the Eastern District of Missouri. The Seventh Circuit has counseled lower courts that the first-filed case may proceed where the principles governing a request to transfer do not indicate that the case should be transferred. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980(7th Cir. 2010). After examining the principles that govern a request to transfer a case pursuant to 28 U.S.C. § 1404(a), the Court finds that governing principles favor a transfer to the Eastern District of Missouri.

#### A. LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), a district court may "[f]or the convenience of parties and witnesses, and in the interest of justice . . . transfer any civil action to any other district or division where it may have been brought." In determining whether or not to transfer a case, the court weighs factors for and against transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The party seeking the move bears the burden of demonstrating that the transfer venue is more convenient or would better serve the interests of justice. *Id*. at 219-20.

In order to transfer a case to another venue, four factors must first be met "(1) venue is proper in this district; (2) venue [and jurisdiction] are proper in the transferee district; (3) the transferee district is more convenient for both the parties

and witnesses; and (4) transfer would serve the interests of justice." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009) (citing *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007); *Grossman v. Smart*, 73 F.3d 364 (7th Cir. 1995)). Neither party contests either of the first two factors; therefore, the Court will not discuss them. Furthermore, the Court notes that the second factor is clearly satisfied because Plaintiff's attorney is currently pursuing the *Drake* case against Defendant in the transfer district of the Eastern District of Missouri.[1] Therefore, the two factors the Court must consider are the "convenience of parties and witnesses" and the "interests of justice" factors.

**B. DISCUSSION**

Overall, the Court finds that a transfer to the Eastern District of Missouri is appropriate. The "convenience of parties and witnesses" factors are either neutral or only slightly weigh against transfer. However, the "interests of justice" factors overwhelming support transferring the case.

**i. CONVENIENCE OF THE PARTIES AND WITNESSES**

The Court finds that the convenience of parties and witnesses slightly weighs against transfer; however, most of the factors are neutral as to whether the Central District of Illinois or the Eastern District of Missouri is the most convenient venue. To evaluate the "convenience of witnesses and parties," the court considers the following five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material

---

[1] The Court notes that the Eastern District of Missouri would be a proper venue for this case, even though the case involves Illinois, Tennessee, and Ohio plaintiffs because under the venue statute, Steak N Shake is considered a resident of Missouri. 28 U.S.C. § 1391(c)(2).

7

events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of others." *Id.* (citing *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000)).

### a. PLAINTIFF'S CHOICE OF FORUM

Although a plaintiff's choice of forum is usually given substantial weight, especially if it is a plaintiff's home forum, this weight is greatly discounted in class actions. *Jaramillo*, 664 F. Supp. 2d at 914 (citing *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007); *Blumenthal v. Management Assistance, Inc.*, 480 F. Supp. 470, 472 (N.D. Ill. 1979)). Although the current named Plaintiff resides in Peoria, the Court finds Plaintiff's choice of forum unpersuasive for several reasons. First, the Central District of Illinois is only a home venue for five of the ten total plaintiffs. The Central District of Illinois is not the home venue, or even a more convenient venue, for the opt-in plaintiffs from Ohio or Tennessee. Second, Plaintiff seeks to amend her complaint to add a second named plaintiff from Ohio. If allowed, the Central District of Illinois would be a foreign court for this named plaintiff. Lastly, Plaintiff seeks to certify a nationwide class action to represent any manager of Defendant's restaurants, who is not eligible to participate in the *Drake* litigation. If class certification occurs, the Central District of Illinois will not be the home venue, or even a convenient venue, for some of those plaintiffs. Therefore, the Court finds that the instant case demands less deference to Plaintiff's choice of forum. *See id.*

b. **SITUS OF THE MATERIAL EVENTS**

The material events of this case were the classifications of Defendant's managers as exempt from overtime pay. This is a decision that was likely made at Defendant's headquarters in Indianapolis, Indiana. *See Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1060 (N.D. Ill. June 17, 2015) (finding that the material events of an alleged FACTA violation occurred at the corporate headquarters, not where the violation of printing too much information on a receipt took place); *Jaramillo*, 664 F. Supp. 2d at 914 (finding that the material events of an alleged misrepresentation of nutritional information on a menu took place at the restaurant's headquarters, not the individual restaurants). Indianapolis is approximately 213 miles from Peoria. Indianapolis is approximately 242 miles from St. Louis. Therefore, Peoria is only slightly more convenient than St. Louis. In this respect, the Court finds that the situs of the material events is neutral.

c. **RELATIVE EASE OF ACCESS TO SOURCES OF PROOF**

As discussed with the situs of material, the Defendant is located in Indianapolis, therefore documents and decision-making employees are likely to be located there. However, the location of records generally has no impact on the transfer analysis, unless they are extraordinarily voluminous or otherwise difficult to ship. *Rosen*, 152 F. Supp. 3d at 1060 (citations omitted). Furthermore, neither party has argued that the records will be an issue.

Plaintiff argues that relative ease of access to sources of proof should favor the Central District of Illinois because the "events (e.g., actual work performed in what environment) occurred in Peoria." (Doc. 19 at 17). However, the Court notes that only

9

favors the five (out of the ten) plaintiffs who live in and around Peoria. For the Ohio plaintiffs, the "events" occurred in Ohio, which is only about 30 miles closer to Peoria than St. Louis. For the two Tennessee plaintiffs, the "events" occurred in Nashville, which would be closer to the Eastern District of Missouri. Therefore, although some of Plaintiff's "events" may have occurred in Peoria, about half of it did not. Therefore, the Court finds that this factor weighs against transferring, but only slightly.

### d. CONVENIENCE OF PARTIES AND OTHERS

The convenience of witnesses is often one of the most important factors considered when determining whether to grant a motion to transfer. *Rosen*, 152 F. Supp. 3d at 1061 (citing *Gueorguiev*, 526 F. Supp. 2d at 858). There are two categories of witnesses: party witnesses and non-party witnesses. *Id*. The convenience of non-party witnesses should be given more consideration, because party witnesses normally must appear voluntarily as part of their employment. *Id*. (citing *Jaramillo*, 664 F. Supp. 2d at 915; *Gueorgiev*, 526 F. Supp. 2d at 858). Given the 100-mile radius of the Court's subpoena power, the parties can face a challenge securing live, in-person trial testimony of non-party witnesses. *Id*.; *see also* Fed. R. Civ. P. 45(c)(1); *Jaramillo*, 664 F. Supp. 2d at 915. The Court would usually analyze the location of the identified witnesses compared to each venue; however, neither party explicitly identified witnesses. Therefore, the Court can only consider the plaintiffs (both named and opt-in) and the Defendants.

Plaintiff argues that this factor favors not transferring because Plaintiff's job duties would have been witnessed by co-employees in Peoria. However, this is only true for the five plaintiffs who worked and reside near Peoria. The two Ohio plaintiffs,

10

the two Tennessee plaintiffs, and the southern Illinois plaintiff all reside outside of the Court's 100-mile radius. Therefore, this argument is not as persuasive. However, the Court does note that only the Southern Illinois plaintiff worked within 100 miles of St. Louis. Therefore, this factor does slightly weigh in favor of not transferring.

### ii. INTERESTS OF JUSTICE

The Court finds that the interests of justice overwhelming favor transferring the case to the Eastern District of Missouri. In determining whether to grant a transfer of venue under § 1404(a), the Court gives strong weight to the interests of justice, which may be determinative, even if the convenience of parties and witnesses does not favor transfer. *Jaramillo*, 664 F. Supp. 2d at 915 (citing *Coffey*, 796 F.2d at 220). In determining whether the interests of justice are favored, the Court considers the public's interest in conserving scarce judicial resources, which asks the Court to consider factors like (1) trying related litigation together, (2) ensuring a speedy trial, (3) the court's familiarity with the applicable law, and (4) the relation of the community to the occurrence. *Id.* (citing *Coffey*, 796 F.2d at 220-21); *see also Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Amoco*, 90 F. Supp. 2d at 961-62.

#### a. TRYING RELATED LITIGATION TOGETHER

The Court must consider the level of familiarity of each court with the facts and circumstances surrounding the controversy. *Jaramillo*, 664 F. Supp. 2d at 915-16. This is because § 1404(a) was created to "prevent the situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *Id.* (quotations omitted). The facts and controversy surrounding this case

and *Drake* are substantially similar; the primary difference between the two is which of the respective state wage law statutes is being pursued. Furthermore, *Drake* has been proceeding for almost two years, whereas this case was just filed in January. Therefore, the Court finds that the Eastern District of Missouri is more familiar with the facts and the circumstances surrounding the controversy than this court. The parties and the claims are so similar it "would be wasteful and duplicative to have two different courts familiarize themselves with the controversy." *Jaramillo*, 664 F. Supp. 2d at 916; see also *Rosen*, 152 F. Supp. 3d at 1063 ("Transfer thus is warranted based on the common factual and legal issues that will arise in these two cases").

Furthermore, the Court notes that it would be inherently unfair to force the Defendant to defend substantial similar claims, and potentially substantially similar class actions, in two different district courts, which reside under the jurisdiction of different appellate courts. Transferring the cases to the same district would eliminate the risk of inconsistent adjudications for Defendant. Additionally, it protects potential class plaintiffs for inconsistent or frustrated settlements negotiations because of an action in a separate court. *See Castillo v. Taco Bell of Am., LLC,* 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) (collecting cases that stay or transfer duplicative FLSA cases in favor of the first-filed to prevent Defendants from litigating the same class of issues in both locations); *White v. NFL*, 822 F. Supp. 1389, 1434-35 (D. Minn. 1993) (enjoining other class actions under the All-Writs Act to prevent inconsistent class action adjudications in different jurisdictions and prevent the frustration of settlements by other courts' actions). Therefore, this factor weighs in favor of transferring the case to the Eastern District of Missouri.

b. **ENSURING A SPEEDY TRIAL**

The Eastern District of Missouri is more likely to bring this case to trial quicker than this District. The Central District of Illinois averages 10.7 months from the filing of a civil case to its disposition; however, it averages 38.1 months from filing to trial. *See* Fed. Ct. Management Statistics, *available at*: http://www.uscourts.gov/fcmstat/index.html. The Eastern District of Missouri averages 21.9 months from the filing of a civil case to its disposition, which is longer than the Central District. *See id.* at 8. However, the Eastern District of Missouri averages 26.4 months from the filing of a civil case to its trial. *Id.* That is a year quicker than the average case in the Central District of Illinois. Therefore, the Court finds this factor favors transferring the case.

Plaintiff argues that the Court should find against transferring the case because the Eastern District of Missouri's docket is more congested than this District's docket. (Doc. 19 at 20). Plaintiff argues that the Eastern District of Missouri has 3,375 cases pending while this District only has 1,923. Therefore, judges in the Eastern District of Missouri have an average of 388 cases, while judges in this District have an average of 383 cases. (Doc. 19 at 20). The Court finds the difference of five cases unpersuasive, especially given the Eastern District of Missouri's quicker pace to trial.

c. **COURT'S FAMILIARITY WITH THE APPLICABLE LAW**

The primary applicable law is the FLSA, which is a federal law. Therefore, neither court holds an advantage in applying federal statutory law. *See Rosen*, 152 F. Supp. 30 at 1065. Although the Central District of Illinois would be more familiar with applying the applicable Illinois minimum wage law, it would be no more familiar than the Eastern District of Missouri with the applying the applicable Ohio minimum wage law claims Plaintiff seeks to add. Additionally, as Plaintiff acknowledged, Judge Ross has applied the Illinois minimum wage law in a previous case and is therefore not unfamiliar with it. *See White v. 14051 Manchester Inc.*, 301 F.R.D. 368 (E.D. Mo. 2014).

Furthermore, having managed this case for two years, the Eastern District of Missouri is far more familiar with the facts common to both cases and the FLSA's applicability to the facts. It would be inefficient for two courts to invest time in learning the common facts and applying the FLSA to them, especially when the effort has already begun by another court. *See Rosen*, 152 F. Supp. 3d at 1065; *Jaramillo*, 664 F. Supp. 2d at 917.

### d. RELATION OF THE COMMUNITY TO THE OCCURRENCE

Usually, the relation of the community to the occurrence is given a great deal of weight; however, that weight is significantly lessened when addressing a potential nationwide class action. *Id.* (citing *Jaramillo*, 664 F. Supp. 2d at 917). This is because there is no compelling community interest to preserve by selecting Peoria over St. Louis, or over Ohio or Tennessee (where the other opt-in plaintiffs reside). *Id.* (citing *Jaramillo*, 664 F. Supp. 2d at 917).

Plaintiff argues that this factor should weigh against transferring because Illinois has a significant interest in resolving controversies regarding its wages under the Illinois minimum wage laws and most of the potential class residents are Illinois residents. The Court notes Plaintiff is seeking to bring claims of both Illinois and Ohio minimum wage laws. Because claims are sought under multiple different state wage laws, the Court finds that there is no strong compelling community interest in retaining the claims in Illinois over Missouri. Additionally, the Court notes that only five of the ten total plaintiffs are Illinois residents, which is only half of the plaintiffs, certainly not most of them. Therefore, the Court finds that this factor is neutral, because there is no compelling community interest preserved in selecting one venue over the other.

## IV. CONCLUSION

In summary, these plaintiffs and claims are sufficiently different that a first-filed dismissal is inappropriate. However, a transfer to the United States District Court for the Eastern District of Missouri is warranted because the interest of justice—especially in conserving scarce judicial resources—strongly favors transfer and the convenience of the parties and witnesses only slightly opposes transfer.

**IT IS THEREFORE ORDERED:**

Defendant's Motion to Transfer (Doc. 15) is granted. This case is TRANSFERRED to the Eastern District of Missouri. Defendant's Motion for Leave to File a Reply (Doc. 20) is DENIED AS MOOT. The Clerk is directed to transfer the case.

Entered this __12th___ day of May, 2017.

                                                           s/ Joe B. McDade
                                                          JOE BILLY McDADE
                                   United States Senior District Judge