UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CORINNA CLENDENEN, on behalf of herself and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:17-cv-01506-JAR |
| STEAK N SHAKE OPERATIONS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Corinna Clendenen's Motion for Conditional Class Certification (Doc. 24), and Motion to Toll the Statute of Limitations (Doc. 56). Defendant Steak N Shake Operations, Inc. ("SnS") opposes both motions. (Docs. 44, 58.)

### I. Background

SnS's domestic operations include 550 stores in twenty-eight states. (Doc. 44-11 at ¶ 3.) The stores are organized into eight "Group Markets," many of which include locations in multiple states: Atlanta (39 stores); Bloomington (60 stores); Cleveland (78 stores); Dallas (15 stores); Indianapolis (85 stores); Orlando (83 stores); St. Louis (51 stores); and a "Signature" market made up of four unique stores with no servers. (*Id*. at ¶ 5-8.) Each Group Market is managed by a Division President. (*Id*. at ¶ 9.) Group Markets are subdivided into districts, each run by a District Manager who oversees multiple stores. (*Id*.) Each store is staffed with a General Manager ("GM"), multiple Managers[1] who report directly to the GM and who oversee

---

[1] Typically no more than five managers. (Doc. 44-11 at ¶ 11.)

the rest of the restaurant's staff: Operations Supervisors, Production Trainers, Service Trainers, and hourly production and service employees. (*Id*. at ¶ 9.)

SnS classifies its GM's and Managers as exempt administrative and executive employees who are not eligible for overtime. (*See* Doc. 44 at 18.) Plaintiff is suing on behalf of herself and similarly situated Managers employed by SnS in all domestic Group Markets except the St. Louis Group Market, [2] alleging that the Managers' overtime-exempt classification violates of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and seeking to recover unpaid overtime. (Doc. 33.) She asks the Court to conditionally certify an FLSA class defined as:

> All persons who worked, or will work during the liability period, as Managers (or persons with similar job duties) for [SnS] at all corporate owned retail restaurants at any time from three years prior to the filing of this Complaint (hereafter the "FLSA Collective") for all locations except ones within the St. Louis Group Market.

(Doc. 25 at 10.) SnS opposes certification in this case, arguing that the day-to-day work experience of would-be class members varies too dramatically among Group Markets, GM's, and locations to proceed as a class. (Doc. 44.)

In the event the Court conditionally certifies the class, Plaintiff additionally asks the Court to toll the statute of limitations for the time her motion to certify was pending. (Doc. 56.) SnS argues that Plaintiff lacks standing to seek tolling on behalf of potential opt-in plaintiffs and that, in any event, the normal delays in the process of litigation do not amount to extraordinary circumstances that support equitable tolling. (Doc. 58.)

## II. Conditional Certification

### a. Legal Standard

---

[2] A parallel suit by St. Louis Group Market Managers is currently proceeding independently. *See Drake v. Steak N Shake*, No. 4:14-cv-1535-JAR (E.D. Mo.).

To proceed as a class, the plaintiff must show that the prospective class members are "similarly situated." 29 U.S.C. § 216(b); *Kautsch v. Premier Comm'ns*, No. 06-CV-04035-NKL, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008). Similarly situated "does not necessarily mean identical." *Arnold v. Directv, LLC*, No. 4:10-CV-352-JAR, 2017 WL 1251033, at *2 (E.D. Mo. Mar. 31, 2017). "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded*, 136 S. Ct. 1036 (2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). Courts in this circuit typically apply a two-step certification process in proposed class actions. *Chankin v. Tihen Commc'ns, Inc.*, No. 4:08CV196HEA, 2009 WL 775588, at *1 (E.D. Mo. Mar. 20, 2009). At the first stage, conditional certification, courts typically apply a lenient standard that requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Beasely v. GC Servs. LP*, 270 F.R.D. 442, 444 (E.D. Mo. 2010) (quoting *Davis v. NovaStar Mortgage, Inc.,* 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). "Plaintiffs' burden at this stage is not onerous" and the court "do[es] not reach the merits of their claims." *Id.* (citing *Kautsch v. Premier Communications,* 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)). Then, at the second stage—near or after the close of discovery—"the court makes a factual determination as to whether the members of the conditionally certified class are similarly situated" and makes the associated legal determination as to whether the members may proceed as a formal class. *Davis*, 408 F. Supp. 2d at 815.

SnS argues that the Court should move directly to the second step in light of the more advanced posture and significant discovery already conducted in *Drake*, asserting that "the Court has all the information needed to conclude that collective treatment is unwarranted." (Doc. 44 at

3

2-6, 9.) However, the Court has since formally certified a class of St. Louis Managers in *Drake*. (*See* Doc. 170 in *Drake*, No. 4:14-cv-1535.) Because the Court determined that the St. Louis Managers *are* similarly situated, *Drake* does not support SnS's assertion that "the Court has all the information needed" to deny certification. (Doc. 44 at 9.) In any event, the Court notes that the discovery conducted in *Drake* is largely limited to the experiences of Managers in the St. Louis Market and therefore further discovery in this case is still necessary. For these reasons, the Court will not apply the strict step-two standard SnS seeks.

That said, the Court cannot ignore the substantial discovery already completed in *Drake*. *See Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012). This is especially true given that Plaintiff herself cites discovery material from *Drake* in her brief in support of conditional certification. (Doc. 25 at 5, n.3.) In situations similar to this one, courts have applied an intermediate standard that requires something more than substantial allegations of an FLSA-violating policy but something less than full-blown proof of being similarly situated: "modest factual support." *See Price v. Daugherty Sys., Inc.*, No. 4:11-CV-1943 CEJ, 2013 WL 3324364, at *4 (E.D. Mo. July 1, 2013); *Kayser*, 912 F. Supp. 2d at 812. Under this intermediate standard, the Court "will compare Plaintiff['s] allegations set forth in [her] Complaint with the factual record assembled through discovery to determine whether [she has] made sufficient showing beyond [her] original allegations that would tend to make it more likely that a class of similarly situated employees exists." *Kayser*, 912 F. Supp. 2d at 812.

b.  Analysis

In her Amended Complaint, Plaintiff alleges that SnS Managers are subject to the same FLSA-violating policy of misclassifying them as exempt administrative or executive employees. (Doc. 33 at 5-6.) She makes the following factual claims in support: all SnS Managers were subject to a uniform job description; SnS Managers were not paid overtime; SnS Managers had

4

the same or substantially similar primary job duties regardless of market or store; SnS Managers' primary job duties were not administrative or managerial but were largely the same as non-exempt hourly employees'; SnS Managers' work was strictly controlled by SnS policy and oversight; SnS Managers were routinely scheduled to work, and did work, far in excess of forty hours per week; and SnS did not document or record hours worked by Managers. (Doc. 33.)

Backing up Plaintiff's claims are declarations from ten former Managers: herself, Corrina Clendenen, who worked as a Manager for approximately two years at stores in and around Peoria, Illinois; Corey Brown, who worked as a Manager for approximately six years at multiple stores in Tennessee; Paul Holzheu III, who worked as a Manager at multiple stores in Texas; Catherine Jett, who worked as a Manager for approximately nine years at multiple stores in Tennessee; Sarah Lohnes, who worked as a Manager for approximately two years in East Peoria, Illinois; Lucinda Moon-Leezer, who worked as a manager for ten months in Peoria, Illinois; Theresa Tipton, who worked as a Manager for approximately four years at stores in East Peoria and Peoria, Illinois; Orry Combs, who worked as a Manager at stores in Jacksonville and St. Augustine, Florida; Brittany Hand, who worked as a Manager for approximately three years at a store located in Marion, Illinois; and Jennifer Piccolomini, who worked as a Manager for approximately seven months at a multiple stores in Ohio. (Docs. 25-3 to 25-12.) In addition, Plaintiff attached SnS's corporate job description (Doc. 25-1), and a copy of the SnS employee handbook (Doc. 25-2).

Based on the factual record before it, the Court concludes that Plaintiff has provided "modest factual support" for her original allegations that a class of similarly situated employees likely exists based on a single, potentially FLSA-violating policy that, if proven, would give rise to class-wide liability. *See Bouaphakeo*, 765 F.3d at 796. Specifically, Plaintiff offers evidence

that Managers throughout the company were uniformly classified as exempt from overtime[3] even though their day-to-day work duties, regardless of Group Market or store location,[4] were not administrative or managerial but were largely the same as those of non-exempt hourly employees.[5] For instance, the Managers state that their most important job duties on any given shift—and the work they spent the bulk of their time doing—included working the grill, working back dress, working fountain, making shakes, dropping fries, cooking the food, serving the food working cash counter, assisting the drive-through customers, and cleaning.[6] At the same time, the Managers state that they were rarely involved, if at all, in employment decisions like hiring, disciplining, or terminating hourly employees, determining employee pay, or scheduling, and that their opinions on personnel matters were typically given little, if any, weight.[7] Plaintiff's evidence also supports her claim that Managers routinely worked more than forty hours a week without being paid overtime.[8]

---

[3] *See* Manager Job Description (Doc. 25-1).
[4] Clendenen Dec. (Doc. 25-3 at 5-6); Brown Dec. (25-4 at 5); Holzheu Dec. (Doc. 25-5 at 6); Jett Dec. (Doc. 25-6 at 5); Lohnes Dec. (Doc. 25-7 at 5); Moon-Leezer Dec. (Doc. 25-8 at 5); Tipton Dec. (Doc. 25-9 at 5); Combs Dec. (Doc. 25-10 at 5); Hand Dec. (Doc. 25-11 at 4-5); Piccolomini Dec. (Doc. 25-12 at 5).
[5] Clendenen Dec. (Doc. 25-3 at 2); Brown Dec. (Doc. 25-4 at 3); Holzheu Dec. (Doc. 25-5 at 3); Jett Dec. (Doc. 25-6 at 3); Lohnes Dec. (Doc. 25-7 at 3); Moon-Leezer Dec. (Doc. 25-8 at 3); Tipton Dec. (Doc. 25-9 at 3); Combs Dec. (Doc. 25-10 at 3); Hand Dec. (Doc. 25-11 at 3); Piccolomini Dec. (Doc. 25-12 at 3).
[6] Clendenen Dec. (Doc. 25-3 at 3); Brown Dec. (Doc. 25-4 at 3); Holzheu Dec. (Doc. 25-5 at 3); Jett Dec. (Doc. 25-6 at 3); Lohnes Dec. (Doc. 25-7 at 3); Moon-Leezer Dec. (Doc. 25-8 at 3); Tipton Dec. (Doc. 25-9 at 3); Combs Dec. (Doc. 25-10 at 3); Hand Dec. (Doc. 25-11 at 3); Piccolomini Dec. (Doc. 25-12 at 3).
[7] Clendenen Dec. (Doc. 25-3 at 3-4); Brown Dec. (Doc. 25-4 at 3-4); Holzheu Dec. (Doc. 25-5 at 3-4); Jett Dec. (Doc. 25-6 at 3-4); Lohnes Dec. (Doc. 25-7 at 3-4); Moon-Leezer Dec. (Doc. 25-8 at 3-4); Tipton Dec. (Doc. 25-9 at 3-4); Combs Dec. (Doc. 25-10 at 3-4); Hand Dec. (Doc. 25-11 at 3-4); Piccolomini Dec. (Doc. 25-12 at 3-4).
[8] Clendenen Dec. (Doc. 25-3 at 2,5,6.); Brown Dec. (25-4 at 2, 5); Holzheu Dec. (Doc. 25-5 at 2, 5); Jett Dec. (Doc. 25-6 at 2, 5); Lohnes Dec. (25-7 at 2, 5); Moon-Leezer Dec. (Doc. 25-8 at 2, 5); Tipton Dec. (Doc. 25-9 at 2, 5): Combs Dec. (Doc. 25-10 at 2, 5); Hand Dec. (Doc. 25-11 at 2, 5); Piccolomini Dec. (Doc. 25-12 at 2, 5).

Plaintiff correctly asserts that the Court does not, at this stage, examine the merits of Plaintiff's underlying FLSA claims or SnS's arguments against certification. *Cox v. Gordmans Stores, Inc.*, No. 4:16CV219 RLW, 2016 WL 6962508, at *2 (E.D. Mo. Nov. 28, 2016); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335, 2011 WL 4089251, at *4 (E.D. Mo. Sept. 14, 2011); *McKinzie v. Westlake Hardware, Inc.*, No. 09–0796, 2010 WL 2426310, at *4 (W.D. Mo. June 11, 2010). Thus, the Court will conditionally certify the class.

### III. Equitable Tolling

#### a. Legal Standard

In general, actions alleging violations of the FLSA are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). However, the statute of limitations is extended to three years if the plaintiff can show that the violation was willful. *Id*. For named plaintiffs, the statute of limitations stretches back two or three years from the date the complaint is filed. 29 U.S.C § 256(a). For unnamed, opt-in plaintiffs in an FLSA collective action, the limitations period reaches back from the date he or she provides written consent to join. 29 U.S.C. § 256(b). However, a statute of limitations may be equitably tolled if a plaintiff can establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Equitable tolling is to be used "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

#### b. Analysis

As an initial matter, SnS argues that Plaintiff lacks standing to seek equitable tolling on behalf of class members who have not yet opted-in. (Doc. 58.) Central to a federal court's jurisdiction under Article III of the United States Constitution, is the concept of "justiciability," which includes a requirement that the party seeking relief have "standing" to do so. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires three things: (1) a

7

concrete and particularized injury that is actual or imminent and not merely conjectural or hypothetical; (2) a causal link between the injury and the conduct alleged; and (3) that it be likely that a favorable decision will redress the injury. *Id*. (citations omitted).

SnS argues that Plaintiff lacks a concrete or particularized injury because, as a named plaintiff, the statute of limitations applicable to her claims is already determined—two or three years prior to the filing of her complaint. 29 U.S.C § 256(a). Thus, SnS asserts, she does not stand to benefit from this Court's grant of equitable tolling and therefore. (Doc. 58 at 2-4.) In addition, SnS argues that Plaintiff seeks to remedy a hypothetical injury: time lost for as-yet unknown, and possibly non-existent, opt-in plaintiffs. (*Id*.) In other words, SnS asserts that Plaintiff seeks hypothetical relief she that does not redress any injury to her.

However, granting motions filed by named plaintiffs to equitably toll the statute of limitations for potential opt-in plaintiffs is not uncommon in this District, especially as to the period of time during which the motion to conditionally certify is pending. *See, e.g. Getchman v. Pyramid Consulting, Inc.*, No. 4:16 CV 1208 CDP, 2017 WL 713034, at *6 (E.D. Mo. Feb. 23, 2017); *Davenport v. Charter Commc'ns, LLC*, No. 4:12CV0007 AGF, 2014 WL 2993739, at *4 (E.D. Mo. July 3, 2014); *Holliday v. J S Exp. Inc.*, No. 4:12CV01732 ERW, 2013 WL 2395333, at *8 (E.D. Mo. May 30, 2013). Likewise, other districts in the Eight Circuit commonly grant equitable tolling for the time it takes the court to rule on a conditional certification motion. *See, e.g.*, *Trogdon v. Kleenco Maint. & Const., Inc.*, No. 5:14-CV-05057, 2015 WL 2345590, at *4 (W.D. Ark. May 15, 2015); *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 581 (D. Minn. 2014); *Waters v. Kryger Glass Co.*, No. 09-1003-CV-W-SOW, 2011 WL 13290713, at *7 (W.D. Mo. Jan. 12, 2011); *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011). The Court therefore declines SnS's implied invitation to find that all of these cases were improperly decided in the absence of Article III jurisdiction.

Moreover, the Court will follow the precedent set by this and other District Courts in the Eight Circuit and will toll the statute of limitations while Plaintiff's motion for conditional certification was pending. *See Davenport*, 2014 WL 2993739, at *4 ("The Eighth Circuit has not directly addressed the issue of equitable tolling in an FLSA case," but several district courts in the Circuit, including this one, "have held that delays of varying lengths between the filing of a motion for conditional certification and a court's ruling on that motion constitute 'exceptional circumstances' that warrant the equitable tolling of the FLSA claims.") The Court specifically notes that because of the scope of this case and because it had to be transferred to the undersigned, the nearly-seventeen-month delay in ruling on Plaintiff's motion to conditionally certify is abnormally long and was certainly outside the control of potential opt-in plaintiffs.

## IV. Conclusion

The Court concludes that Plaintiff has made a sufficient showing beyond her original allegations that a class of similarly situated employees exists. The Court will therefore grant her motion to conditionally certify the class. In addition, the Court will grant Plaintiff's motion to toll the statute of limitations for the time from when briefing on the motion to conditionally certify was completed through the date of this order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Corenna Clendenen's Motion for Conditional Class Certification (Doc. 24), is **GRANTED**. The Court conditionally certifies a class consisting of current and former SnS Managers who were employed at any time during the three years prior to May 1, 2017, at a restaurant in in any domestic Group Market other than the St. Louis Group Market, as those terms were then defined by SnS.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Toll the Statute of Limitations (Doc. 56), is **GRANTED** and the statute of limitations son Plaintiff's FLSA claims is tolled for

the period commencing July 14, 2017 (when briefing on Plaintiff's Motion to Certify was completed) through the date of this order.

**IT IS FURTHER ORDERED** that within fourteen (14) days of this Order, and **no later than Friday, October 12, 2018**, SnS shall provide to Plaintiff a computer-readable list (in Excel format) of all putative class members and their current or last known addresses, current or last known phone numbers, current or last known email addresses, the inclusive dates of their employment, job title(s) held, and the location(s) worked while employed by SnS.

**IT IS FURTHER ORDERED** that the parties shall meet and confer to address any objections to the Notice and Consent Form filed as ECF No. 25-13 and identified as Exhibit M to Plaintiff's Memorandum in Support of her Motion for Conditional Certification. Defendant shall, **within seven (7) days of the date of this order**, submit to the Court in writing any unresolved objections.

**IT IS FINALLY ORDERED** that notice shall be disseminated to putative class members via U.S. Mail and email **no later than fourteen (14) days following the Court's approval of the Notice**.

Dated this 28th day of August, 2018.

                                            _/s/ John A. Ross_
                                            **JOHN A. ROSS**
                                            **UNITED STATES DISTRICT JUDGE**